IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

AT HUNTINGTON


SAMUEL J. JUNIPER,

      Plaintiff,

V.                              CIVIL ACTION NO. 3:03-0572

M & G POLYMERS USA, LLC,

      Defendant.


## FINDINGS AND RECOMMENDATION


When Samuel J. Juniper, a retiree covered under defendant's Pension, Insurance, and Service Award Agreement ("P& I Agreement"), was denied coverage of venipuncture charges for drawing his blood made in conjunction with diagnostic laboratory tests he filed a complaint in magistrate court in Mason County.  In his complaint, brought against M & G Polymers USA, LLC ("M & G"), he seeks damages in the amount of forty dollars plus costs, the amount he was charged for the venipunctures.  The action was removed to this Court by defendant on grounds that plaintiff was seeking to recover benefits from an employer-sponsored welfare benefit plan and that his claims were governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §1001, et seq., and is now pending before the Court on defendant's motion for summary judgment and plaintiff's renewed motion for summary judgment.  The facts, which are not in material dispute, are as follows:

In December of 2002 and February of 2003, charges for diagnostic laboratory tests ordered by a physician at Holzer Clinic included various amounts for each "lab test" and a single charge for "venipuncture."  Thus, there were charges for five lab tests on December 3, 2002, and a thirteen dollar charge for venipuncture, a charge for a lab test on December 12, 2002, and a thirteen dollar charge for venipuncture, and a charge for three lab tests on February 4, 2003, and a fourteen dollar charge for venipuncture.  The Holzer Clinic bills were submitted to Aetna U.S. Healthcare ("Aetna"), the insurance company hired by M & G to service medical claims under the P & I Agreement.  Eighty-five percent of the charges for diagnostic lab tests were paid;[1] however, no payments were made for the three venipuncture charges.  In an "Explanation of Benefits" which Aetna sent to plaintiff, it was explained that the plan "provides benefits for covered expenses at the prevailing charge level, as determined by Aetna, made for service in the geographical area where it is provided" and that "in determining the amount of a charge that is covered [Aetna] may consider other factors including the prevailing charge in other areas."[2]  Thereafter, plaintiff sought review of the denial from Kimm A. Korber, the Plan Administrator at M & G.  Mr. Korber determined that the venipuncture charges were for services that were "not eligible for reimbursement under the P & I Agreement."  Stating in his decision that the "non-network provider," Holzer Clinic, had

---

[1]  Under the plan, eighty-five percent of eligible charges, exclusive of deductibles, are payable.  In the case of a "select provider," – a healthcare provider entering into an agreement with M & G providing for "extremely favorable pricing" – ninety percent of eligible charges are covered.  Holzer Clinic was not a "select provider."

[2]  The plan provided that "[e]ligible expenses will only include charges for services ... which are reasonably necessary for the care and treatment of the illness and will not include charges for any services ...  in excess of customary charges therefor... ."  A "customary charge" is the "usual charge made by the person, group or other entity rendering or furnishing the services" but does not "mean a charge in excess of the general level of charges made by others rendering or furnishing such services ... within the area... ."

2

"'unbundled' the charges for certain diagnostic testing," submitting "a separate charge for drawing blood necessary to perform the diagnostic tests" and a "separate CPT-4 code for venipuncture," the plan administrator concluded that the separate venipuncture service, which did "not constitute a diagnostic laboratory test," was not covered under the provision for diagnostic laboratory tests or any other provisions of the plan.  Thereafter, plaintiff filed suit against M & G in magistrate court.

The P & I Agreement provides, inter alia, that "[a]ll interpretations, determinations, and decisions of the Plan Administrator" with respect to claims made under the agreement "will be in its sole and exclusive discretion and will be deemed final and conclusive."[3] The applicable standard of review of decisions of the plan administrator is, as a consequence of this language, an abuse of discretion standard, and the Court "will not disturb such a [discretionary] decision if it is reasonable." Booth v. Wal-Mart Stores, Incorporated Associates Health and Welfare Plan, 201 F.3d 335, 342 (4th Cir. 2000).   Though defendant's plan provides that decisions of the administrator are "within its sole discretion" and are "deemed final and conclusive," the abuse of discretion standard is nevertheless applicable and, if not reasonable, the administrator's decision will be reversed. Id. at 343.[4]  Numerous factors have been considered by the courts in determining whether a fiduciary's or a plan administrator's exercise of discretion is reasonable.  In Booth v. Wal-Mart, supra at 342-43, the Court suggested consideration of the following nonexclusive factors:

_____

[3] Those appealing denial of claims were, however, advised that, if the claim was denied, they "may be able to file suit in a state or federal court."

[4] While not entirely clear from the record, it appears that Aetna services the plan and is not the insurer.  Though M & G is apparently both the plan administrator and "financially responsible for benefits payable under the plan," that fact does not give rise to a conflict of interest which would require a less deferential standard of review.  See, Colucci v. AGFA Corporation Severance Pay Plan, 431 F.3d 170, 179 (4th Cir. 2005).

(1) the language of the plan; (2) the purposes and goals of the plan; (3) the adequacy of the materials considered to make the decision and the degree to which they support it; (4) whether the fiduciary's interpretation was consistent with other provisions in the plan and with earlier interpretations of the plan; (5) whether the decisionmaking process was reasoned and principled; (6) whether the decision was consistent with the procedural and substantive requirements of ERISA; (7) any external standard relevant to the exercise of discretion; and (8) the fiduciary's motives and any conflict of interest it may have.

Because the Court believes that the evidence before it on the summary judgment motion establishes without dispute that the decision to deny benefits was, in fact, arbitrary, was not supported by evidence,  was inconsistent with earlier interpretations of the plan, and was not reasoned or principled, it can only conclude that the decision denying coverage was unreasonable and that plaintiff is entitled to judgment.

As an initial matter, it is significant to note that the explanation given for denying benefits by Aetna and that given by the plan administrator differed.  The Explanation of Benefits provided by Aetna advised plaintiff that the venipuncture charges were not paid because the plan provided benefits "at the prevailing charge level, as determined by Aetna, made for the service in the geographical area where it is provided," and that "[i]n determining the amount of a charge that is covered [Aetna could] consider other factors... ."  Clearly, this denial was based on Aetna's view that the procedure was "in excess of customary charges," a basis under the plan for denying or reducing amounts paid on a claim.[5]  When, however, plaintiff's appeal was considered by the plan administrator – who could "not find any apparent errors in Aetna's processing" of the claim, the denial of benefits was upheld on an entirely different basis, i.e., that a "separate venipuncture service

---

[5]  In this regard, the Court would note that there is no evidence in the record indicating that the customary manner of billing for diagnostic laboratory tests differed from that of the provider, nor is there evidence indicating that the charges submitted were greater than those customarily made by the provider or by others furnishing the same services.

does not constitute a diagnostic laboratory test" and therefore it was not a covered expense under the P & I Agreement.   In fact, as defendant has pointed out in its memorandum,  the decision by Aetna to deny payment for venipuncture apparently stems from a "procedure for determining when venipuncture services are reimbursable," a "procedure" adopted by Aetna long before it was retained by defendant to service the P & I Agreement.  This "procedure" applied to "[a]ll Aetna Health coverage," meaning, presumably, coverage under Aetna's policies, and obviously, because of the date of its adoption, was not based on any language in the P & I Agreement.   Both the plan administrator in his decision and defendant in its memorandum seem to attach importance to the fact that the provider "unbundled" the charges, submitting a separate charge for drawing blood.  In prior billings in which coverage for drawing blood was provided, however, the charges were, similarly, "unbundled" and the charge for "venipuncture" given the "CPT Code" 36415, a code which Aetna's "Procedure" states now requires denial.   No  rational basis is apparent for separating the procedure for drawing blood from the diagnostic laboratory tests for which the blood was drawn, and defendant has offered none beyond the conclusory statement, echoing the plan administrator's statement, that the separate venipuncture service does not constitute a diagnostic laboratory test.  It is all part and parcel of the same service, and, clearly, diagnostic lab tests such as those performed here require blood to be drawn.  Indeed, in his denial of plaintiff's appeal the plan administrator describes "a separate charge for drawing blood <u>necessary</u> to perform the diagnostic tests" (emphasis added).

Exclusion of venipuncture from coverage for diagnostic lab tests would, in the Court's view, only be reasonable if the P & I Agreement specifically excluded that procedure.  It is certainly conceivable that separate charges for venipuncture might be questioned on grounds of reasonableness of the charge or whether it was reasonable and customary for healthcare providers

to bill in this manner; however, there is no evidence in the record concerning billing practices or customary charges and the plan administrator did not deny the claim on the basis that the charges were in any way different from or in excess of customary charges.  Finally, the evidence indicates that the charge for venipunctures performed in conjunction with diagnostic lab tests had historically been covered under the P & I Agreement, and that, as a consequence, the plan administrator's interpretation in this instance was not consistent with earlier interpretations.  Defendant has asserted that plaintiff's position with respect to prior interpretations is simply that M & G must pay the charges because "such amounts were always paid from the Plan and neither M & G nor its insurance carrier, nor anyone else has any authority to change the status quo in any way."  Defendant points out that "'usual fees charged by providers,'" "'the prevailing range of fees'" and "'unusual circumstances'" will change over time and that "what constitutes 'reasonable and customary fees' is not a static concept and is likewise subject to change."  Of course, plaintiff has not argued that M & G must pay the charges because they were always paid and that no one can change the status quo. He simply points out that coverage of diagnostic laboratory tests, including venipuncture, has been provided in the past under the terms of the plan and those terms have not, insofar as the evidence shows, been changed or modified.  As for changes in "usual fees," "prevailing range of fees" or "unusual circumstances," it need only be noted, as previously pointed out, that there is no evidence in the record that "reasonable and customary" fees charged by the provider or by others required an adjustment or that the plan administrator relied upon such in affirming the denial of benefits under the plan.  The evidence in the record before the Court shows that plaintiff's claims were denied initially on the basis of a policy adopted by Aetna long before it began servicing claims under defendant's P & I Agreement, that the plan administrator, though purportedly finding "no apparent

6

errors in Aetna's processing" of plaintiff's claims, affirmed its decision on a different basis, that the administrator's decision was neither well reasoned nor well supported and that the denial of coverage ignored prior interpretations finding coverage for identical claims based on language in the P & I Agreement which had not, insofar as the evidence shows, been altered or amended.

## RECOMMENDATION

Believing that the evidence in this case establishes that the denial of coverage was unreasonable and, as a consequence, constituted an abuse of discretion by the plan administrator, it is **RESPECTFULLY RECOMMENDED** that defendants' motion for summary judgment be denied, that plaintiff's renewed motion for summary judgment be granted and that judgment be entered in favor of the plaintiff.

Plaintiff and defendant are hereby notified that a copy of these Findings and Recommendation will be submitted to the Honorable Robert C. Chambers, United States District Judge, and that, in accordance with the provisions of Rule 72(b), Fed.R.Civ.P., the parties  may, within thirteen days of the date of filing these Findings and Recommendation, serve and file written objections with the Clerk of  this Court, identifying the portions of the Findings and Recommendation to which objection is made and the basis for such objection.  The judge will make a de novo determination of those portions of the Findings and Recommendation to which objection is made in accordance with the provisions of 28 U.S.C. §636(b) and the parties are advised that failure to file timely objections will result in a waiver of their right to appeal from a judgment of the

district court based on such Findings and Recommendation.  Copies of objections shall be served on all parties with copies of the same to Judge Chambers and this   Magistrate Judge.

The Clerk is directed to file these Findings and Recommendation and to transmit a copy of the same to plaintiff and all counsel of record.

DATED:  June 4, 2007

MAURICE  G.  TAYLOR,  JR.
UNITED  STATES  MAGISTRATE  JUDGE