IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

SAMUEL J. JUNIPER,

          Plaintiff,

v.                                        CIVIL ACTION NO. 3:03-0572

M & G POLYMERS USA, LLC

          Defendant.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court are cross Motions for Summary Judgment by Plaintiff and Defendant. On June 23, 2003, the Court ordered that the above-styled civil action be referred to the Honorable Maurice G. Taylor, Jr., United States Magistrate Judge, pursuant to 28 U.S.C. § 636(b)(1)(B), for pretrial management and submission of his proposed findings of fact and recommendation. Magistrate Judge Taylor submitted his findings and recommended Defendant's Motion for Summary Judgment be denied, Plaintiff's renewed Motion for Summary Judgment be granted and judgment be entered in favor of Plaintiff. Defendant objected to the findings and recommendation. Defendant argued that Magistrate Judge Taylor failed to give the appropriate deference to the Plan Administrator, and erroneously found that the decision by the Plan Administrator was unreasonable. In addition, Defendant argued that if the Court agrees with Magistrate Judge Taylor's findings, the dispute should be remanded to the Plan Administrator to resolve. Plaintiff responded to those objections. The Court has reviewed the pleadings and

1

**ADOPTS** the Magistrate Judge's findings and recommendation.  Plaintiff's renewed Motion for Summary Judgment is **GRANTED**, Defendant's Motion for Summary Judgment is **DENIED**.  The case is therefore **DISMISSED**.

## *Statement of Facts*

On December 3, 2002 Plaintiff went to Holzer Clinic to have blood taken for testing.  The clinic charged $205.00 for the procedure.  (AR 1.) The insurance provider covered and partially paid for all but $13.00 of the bill.  The uncovered charge was for venipuncture.[1]  Aetna's Explanation of Benefits ("EOB") stated this denial of coverage was because the charge was not the "prevailing charge level, as determined by Aetna."[2] *Id.* When Plaintiff called Aetna he was told that the industry standard was not to pay for the venipuncture and it was an incidental expense. *Id.* The same charge was denied when Plaintiff went to the Clinic on December 12, 2002 and February 4, 2003 for blood testing.  (AR 2-3.)  The total amount in dispute is $40.00.

Plaintiff contacted the M & G Plan Administrator to challenge the denial of benefits.  On April 24, 2003[3] Kimm Korber ("Plan Administrator") responded with a letter that "constitutes a denial of benefits under the Plan's claims review procedure."  (AR 13.)   The Plan Administrator explained that the charge for venipuncture is not eligible for reimbursement under the Pension, Insurance, and Service Award Agreement ("P&I Agreement") since the charges were "unbundled"

---

[1] Venipuncture is the "puncture of a vein, usually to withdraw blood or inject a solution." *Stedmans Medical Dictionary* (27th ed. 2000).

[2] This language of the "prevailing charge . . . in the geographic area" refers to a determination by Aetna that the charge was not "reasonable and customary." (AR 44-45.)

[3] Plan Administrator sent two letters on April 24, 2003, the other letter addressed a denial of benefits for different claims, and an explanation of "reasonable & customary" determinations. (AR 9-11.)  The relationship between the two letters will be addressed later.

for the diagnostic tests and therefore the Clinic "submitted a separate charge for drawing the blood." (AR 12-13.) The letter also addresses Plaintiff's claim that venipuncture charges had previously been paid, most recently in July 2002, by United Healthcare at the same clinic. *Id.* The Plan Administrator explained that the former company, United Healthcare considered Holzer Clinic a network provider and covered the charges.

Aetna considers Holzer a non-network provider and does not allow for a separate venipuncture charge. The issue of coverage is not stated as being related to whether Holzer Clinic is in network or not, but simply that Aetna does not pay unbundled charges whereas United Healthcare did.[4] According to Kober, under the P&I Agreement, "charges made for *diagnostic laboratory tests* will be eligible for reimbursement wherever performed when authorized to by a doctor. . . . A separate venipuncture service does not constitute a diagnostic laboratory test."[5] (AR 13, 25.) The P&I Agreement lists a variety of charges that are considered ineligible for coverage, and venipuncture is not listed. The letter from the Plan Administrator states that since venipuncture is not listed as a specifically covered procedure, it is not covered under the catch all provision that "any service or supply not covered in the plan is excluded." (AR 13.)

Plaintiff filed suit in the Magistrate Court of Mason County on May 27, 2003 appealing the denial of his claim and seeking reimbursement for the charges. On June 23, 2003 the case was removed to this Court since the claims were preempted by Employee Retirement Income Security

---

[4] The April 24, 2003 letter indicates that as a non-network provider Aetna and M&G Polymers have no way to influence Holzer Clinic.

[5] Although Kober adds emphasis on the language of "diagnostic laboratory tests" it appears from this language that the location of the test is not at issue. The statement is that the tests will be covered, "wherever performed when authorized to by a doctor."

Act of 1974 ("ERISA").

### *Standard of Review*

In order to obtain summary judgment under Rule 56(c) of the Federal Rules of Civil Procedure, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Here, the parties do not dispute the material facts contained in the administrative record. Accordingly, this case may be properly disposed of on summary judgment.

Under ERISA, courts must review an administrator's decision to deny plan benefits *de novo*, unless the plan itself confers discretionary authority upon the administrator "to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire and Rubber Co. v. Bruch,* 489 U.S. 101, 115 (1989). When an administrator possesses such discretion, courts may review the eligibility determination only for an abuse of discretion. *Barron v. UNUM Life Ins. Co. of Am.*, 260 F.3d 310, 315 (4th Cir. 2001). The plan at issue in this case states: "[a]ll interpretations, determinations, and decisions of the Plan Administrator" for claims under the agreement "will be in its sole and exclusive discretion and will be deemed final and conclusive." (AR 17.) The Court therefore will not disturb a discretionary decision if it is reasonable. *Booth v. Wal-Mart Stores, Inc.*, 201 F.3d 335, 342 (4th Cir. 2000) ("the standard for review under ERISA of a fiduciary's discretionary decision is for abuse of discretion, and we will not disturb such a decision if it is reasonable."). A decision is reasonable "if it is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence." *Bernstein v. Capitalcare, Inc.*, 70 F.3d 783, 788 (4th Cir. 1995) (citation omitted). "[W]hen a district court reviews a plan administrator's decision under a deferential standard, the district court is limited to the evidence that was before the plan administrator at the

time of the decision." *Id.*; *Elliott v. Sara Lee Corp.*, 190 F.3d 601, 608-09 (4th Cir. 1999).

A number of factors may be considered in the determination of whether the decision is reasonable:

> (1) the language of the plan; (2) the purposes and goals of the plan; (3) the adequacy of the materials considered to make the decision and the degree to which they support it; (4) whether the fiduciary's interpretation was consistent with other provisions in the plan and with earlier interpretations of the plan; (5) whether the decisionmaking process was reasoned and principled; (6) whether the decision was consistent with the procedural and substantive requirements of ERISA; (7) any external standard relevant to the exercise of discretion; and (8) the fiduciary's motives and any conflict of interest it may have.

*Booth*, 201 F.3d at 342-343. Magistrate Judge Taylor applied these factors when he determined the decision was arbitrary, not supported by evidence, inconsistent with earlier interpretations of the plan and not reasonable.

## *Discussion*

ERISA governs the determination of the Plan Administrator and the process of reviewing the denial of the claim. ERISA provides "adequate notice in writing" should be given to a participant in an employee based insurance plan whose claim was denied that "set[s] forth the specific reasons for such denial, written in a manner calculated to be understood by the participant," and that the participant be afforded "a reasonable opportunity . . . for a full and fair review by the appropriate named fiduciary of the decision denying the claim." 29 U.S.C. §§ 1003, 1133. A denial of the claim shall include

> (i) The specific reason or reasons for the adverse determination; (ii) Reference to the specific plan provisions on which the determination is based; (iii) A description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary

29 C.F.R. 2560.503-1. Substantial compliance with the specificity of the notice will be allowed when "the claimant is provided with a statement of reasons that, under the circumstances of the case, permitted a sufficiently clear understanding of the administrator's position to permit effective review." *Ellis v. Metropolitan Life Ins. Co.*, 126 F.3d 228, 235 (4th Cir. 1997). "On the other hand, '[a] *post hoc* attempt to furnish a rationale for a denial of . . . benefits in order to avoid reversal on appeal' is not acceptable." *Cox v. Reliance Std. Life Ins. Co.*, 43 Fed. Appx. 606, 609 (4th Cir. 2002) *citing Short v. Cent. States, S.E. & S.W. Areas Pension Fund*, 729 F.2d 567, 575 (8th Cir.1984). Plaintiff's claim was denied and his denial was reviewed by the Plan Administrator. Plaintiff has petitioned this Court appealing the determination.

I. Reasonableness of Plan Administrator's Determination:

Magistrate Judge Taylor recommended denial of Defendant's Motion for Summary Judgment because the Plan Administrator's decision was not reasonable. Magistrate Judge Taylor relied on the evidence that the Plan Administrator's decision was not based on the same grounds as Aetna's denial, the charges had historically been covered, blood tests are covered under the agreement and Defendant failed to put forth a rational and reasonable basis for covering blood tests but not the procedure to procure the blood.

The agreement that covers this dispute is the Pension, Insurance, and Service Award Agreement ("P&I Agreement"). Although the service providers may change and therefore coverage of specific doctors would change, the basic description in the P&I Agreement of covered procedures does not appear as malleable as Defendant asserts.[6] Reviewing the factors for determining whether

---

[6] The preamble to the P&I Agreement states that "for the duration of this Agreement thereafter, the Employer will provide the following program" of benefits. (AR 19.) The P&I Agreement provides that the "Employer may . . . enter into a contract or contracts with an

the Plan Administrator's basis for denial was reasonable leads the Court to the same conclusion as Magistrate Judge Taylor.

The first factor for the Court to review is the language of the plan "to determine whether the provision of benefits is prescriptive or discretionary and, if discretionary, whether the plan administrator acted within its discretion." *Booth*, 201 F.3d at 343. Even if the plan gives full discretion to the Plan administrator, the agreement cannot "allow a plan to alter the established standard of judicial review of discretionary decisions for reasonableness." *Id.* The P&I Agreement gives the Plan Administrator full discretion, and "[a]ll interpretations, determinations, and decisions . . . will be in its sole and exclusive discretion." (AR 17.) Therefore the review by the Court is one of abuse of discretion and whether the determination by the Plan Administrator was reasonable. *Booth*, 201 F.3d at 343-44.

The eligible and ineligible services are detailed in the P&I Agreement under Exhibit B-1. The P&I Agreement states clearly that "Charges made for diagnostic laboratory tests will be eligible for reimbursement wherever performed when authorized by a doctor licensed to practice medicine." (AR 25.) When Defendant rejected the charge for venipuncture first through Aetna and then the Plan Administrator it used two different reasons, without any explanation or acknowledgment of the discrepancy. First, the charge was denied because the charge was not reasonable and customary, and then the denial was because the charge was not eligible as an unbundled charge. The importance of these two reasons for denial is that they come from an opposite initial determination.

---

insurance company or insurance companies to provide the benefits described in this Exhibit B-1. No insurance company contract which may be entered into by the Employer for the purpose of providing any benefit described in this Exhibit B-1 shall alter, amend or detract from the provisions of this Agreement." (AR 51.)

For a claim to be denied as not customary and reasonable, the determination is based on the underlying finding that the claim was eligible under Exhibit B-1. "This means that, subject to Exhibit B-1's limitations, the reimbursement of eligible charges will be calculated on the basis of the reasonable and customary fee associated with the service preformed." (AR 45.) The Plan Administrator's denial was based on a finding that the charge was not eligible under Exhibit B-1. (AR 13.) The Plan Administrator clearly referred to the P&I Agreement and explained that the unbundled charge was not listed as being covered and therefore was not covered under the policy.

Magistrate Judge Taylor focused on the discrepancies in the reasons for denial, without explanation of what, if any, new evidence or information was used to change that decision. Defendant objected to the Magistrate Judge's reliance on this difference of reasoning and would have the Court rely on a single statement in the letter by the Plan Administrator to find the decisions were consistent: "Based on my review of the information available to me, I do not find any apparent errors in Aetna's processing of your claims." (AR 13.) Defendant asks the Court to ignore the text of the entire letter and focus on that sentence to find conformity of the reasoning. However, that conclusion statement is not read in a vacuum and is not sufficient evidence to ignore a two page letter that clearly stated that "these charges were . . . for services not eligible for reimbursement under the P&I Agreement . . . the apparent issue is that the non-network provider your selected has 'unbundled' the charges." (AR 12.) That the Plan Administrator never indicated there was a difference in reasoning does not mean that there was no difference.

Defendant also argues that the Plan Administrator sent another letter on the same day regarding different claims that discussed the reasonable and customary standards and that discussion "logically applies to both" letters and was "overlooked by Judge Taylor." (Obj. 4 n.3.) There is

nothing in the two letters to indicate that the language and discussion in the reasonable and customary letter would apply to both; in fact, that letter specifically states the Plan Administrator "will address the issues related to the Aetna Explanation of Benefits (EOB) . . . in a separate letter." (AR 9.) The discussion of reasonable and customary related to different charges, under the United Health Care plan, not Aetna, and was specifically handled separately by the Plan Administrator. The decision and discussion for one does not apply to the other. The clarity of the reasonable and customary letter, and the lack of any language referencing the discussion in the letter at issue in this case, illustrates the two claims were denied for two separate reasons.

In the Administrative Record, there are clear examples of claims being denied as not being reasonable & customary and the determinations are based on some clear factors. *See e.g.,* AR 4 (in addressing how the reasonable & customary provisions apply for a different claim the Plan Administrator responds, "United Healthcare processed your claim using the CPT-4 (Current Procedural Terminology) code supplied by your physician's office for the services you received along with the zip code for your physician's location"); AR 9 (Plan Administrator repeats this calculation process for the same claims four months later). There is no such discussion in the letter denying the claims at issue. Also, in the letter referencing the claims before this Court, references to the P&I Agreement do not cite Exhibit B-1(16) the section discussing "Reasonable and Customary" charges but instead Exhibit B-1(2) (Expenses Eligible for Benefits) and B-1(3) (Exclusions and Ineligible Expenses).[7] (AR 13.) There is no language suggesting the Plan Administrator was basing its denial on the same reasoning as Aetna or the claims discussed in the

---

[7]The letter sent the same day approving the denial on the basis of "reasonable and customary" does cite the appropriate section in Exhibit B-1. (AR 9-11.)

other letter.

The fourth factor under *Booth* also provides a strong basis for finding the decision to deny coverage was not reasonable. The charges for venipuncture had been covered in the past under the P&I Agreement. Defendant argues that the past practices should not be considered since the earlier EOBs which approve the treatment were not before the Plan Administrator when making the determination. This argument ignores the reference to the United Healthcare EOB dated July 30, 2002, in the Plan Administrator's letter and the continuing discussion of the changes to coverage under Aetna as opposed to United Healthcare. (AR 12-13.) Plaintiff had been covered for this same procedure before and even though the EOBs may not have been in the Administrative Record the Plan Administrator stated the July 2002 EOB was reviewed. (AR 12.) The past approval of the charges can be considered by this Court even without the EOB in the file, since the past practice was obviously addressed by the Plan Administrator. The Plan Administrator provided nothing to support the change in the determination of coverage, except a vague discussion that the Holzer Clinic is no longer in network, and therefore M&G Polymers and Aetna have no basis to influence the billing practices, and require them to bundle the expenses.[8] (AR 13.)

The past practice of approving the procedure would preclude the statement by the Plan Administrator that venipuncture is ineligible since it is not listed under the catch all provision, which

---

[8] The P&I Agreement states that 90% of eligible charges from a Select Provider will be paid whereas 85% of charges from a non-select provider will be covered. (AR 20.) The discussion of in network verses out of network would apply to whether they would cover 85% or 90% of the charges. No language appears that the approval of procedures is dependant on whether the provider is in network or out of network. In fact the language at issue states that the "diagnostic laboratory tests will be eligible for reimbursement wherever performed when authorized by a doctor licensed to practice medicine." (AR 25.) There is language limiting the Employer's contracting with insurance companies, and requiring that no contract "shall alter, amend or detract from the provisions of this Agreement." (AR 51.)

"provides that any service or supply not covered in the plan is excluded." (AR 13.) It was the same plan that governed the approval of the charges before Aetna took the plan and implemented its overriding policy to not cover venipuncture charges. This denial by Aetna was not based on a policy in the P&I Agreement, rather it was based on Aetna's internal policy that had been in effect before it became Defendant's provider. (AR 18.) Aetna, in 2000, adopted a national policy of denying coverage "[w]hen a laboratory/pathology service requiring venipuncture is billed with a venipuncture procedure, the charge for the venipuncture is considered incidental to the laboratory and/or pathology service." *Id.* The Plan Administrator's determination that this is not covered under the language of the P&I Agreement, although it had been previously covered, is not reasonable when it has been shown that Aetna denied the claim because that is its policy, not the Plan's.

While it is true the Plan Administrator has discretion to determine coverage, it must be done in relation to the governing agreement, and based on more than a scintilla of evidence. The evidence here shows the Plan Administrator did not deny coverage on the same basis as Aetna, and the determination was based on entirely different reasoning, without any explanation or differing evidence. The decision by the Plan Administrator is not a result of "a deliberate, principled reasoning process and . . . supported by substantial evidence." *Bernstein*, 70 F.3d at 788. The decision is not reasonable.

II. Remand to the Plan Administrator:

Defendant next argues that if the Plan Administrator's decision is found to be unreasonable, the case should be remanded to the Plan Administrator for further proceedings. Relying on the ERISA preference that claims be resolved though the plan's review procedures, and the courts' precedent regarding the exhaustion doctrine, Defendant argues for the remand. The Fourth Circuit

11

has determined two instances where remand is not necessary: first, where the evidence clearly shows the administrator abused its discretion and, second, when the substance of the review was full and fair even though it did not comply with all of ERISA's procedural rules.  *Weaver v. Phoenix Home Life Mut. Ins. Co.*, 990 F.2d 154, 159 (4th Cir. 1993); *Ellis v. Metropolitan Life Ins. Co.*, 126 F.3d 228, 238 (4th Cir. 1997).

Defendant misconstrues Magistrate Judge Taylor's decision, as finding there was insufficient evidence to support the findings rather than a failure to review any evidence or provide a consistent explanation of the denial. The cases cited by Defendant illustrate determinations that are far more complex and where substantial evidence related to the determination was discovered through litigation.  *See e.g.*, *Bernstein*, 70 F.3d at 790 (noting that during discovery "much relevant additional evidence has been developed" and the court remanded the case for the Plan Administrator to review the additional evidence); *Sheppard & Enoch Pratt Hosp. v. Travelers Ins. Co.*, 32 F.3d 120, 125 (4th Cir. 1994) (quoting *Berry v. Ciba-Geigy Corp.*, 761 F.2d 1003, 1008 (4th Cir. 1985)) (explaining that a case should be remanded "[i]f the court believes the administrator lacked adequate evidence").  Remand is not the default determination nor required by ERISA, and the Fourth Circuit has repeated that "remand should be used sparingly." *Berry*, 761 F.2d at 1008; *Elliott*, 190 F.3d at 609.  This determination by the Court is not that there was insufficient evidence in the record to support the determination, rather, there was insufficient reasoning to justify the different determinations by the two review processes without any reference to the change or any showing of new evidence reviewed. Given the language and past practices of the Plan, there is no basis for denial of the claim and remand is unwarranted.

Defendant next argues that the failure of the Plan Administrator to provide a reasoned

explanation of the denial is a procedural flaw and should therefore be remanded for further review. This argument does not have merit. The Court finds that the Plan Administrator acted unreasonably when it denied the claims and remand is not necessary for that finding.

### *Conclusion*

For the aforementioned reasons, the Court **ADOPTS** Magistrate Judge Taylor's findings and recommendation. Defendant's Motion for Summary Judgment is **DENIED** and Plaintiff's Motion for Summary Judgment is **GRANTED**. The case is **DISMISSED**. The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER:     July 12, 2007

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE